**Dr. Harvey S. KLEINBERG, et al., individually, and on behalf of all others similarly situated**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2000.

Decided Nov. 29, 2000.

Reargument En Banc Denied Feb. 7, 2001.

Mark C. Schultz, Philadelphia, for appellant.

Steven A. Schwartz, Haverford, for appellee.

Robert B. Hoffman, Harrisburg, for amicus curiae.

Before COLINS, Judge, SMITH, Judge, MIRARCHI, Jr., Senior Judge.

COLINS, Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from the January 19, 2000 order entered by the Court of Common Pleas of Philadelphia County (Trial Court) which order granted, in favor of Plaintiff Dr. Harvey S. Kleinberg, et al., individually, and on behalf of all others similarly situated, and against Defendant SEPTA: (1) a motion for summary judgment as to liability and as to SEPTA's counterclaim; (2) partial summary judgment as to damages; and, (3) injunctive and declaratory relief. Said or-

der further denied SEPTA's motion for partial summary judgment as to liability on its counterclaim. We reverse and remand.

The following facts gave rise to the present appeal. Dr. Harvey S. Kleinberg, a licensed osteopathic physician, is representative of a designated class of medical and osteopathic physicians (hereinafter Physician Class) who personally diagnosed and evaluated their patients' injuries, after which they prescribed specific, individualized physical therapy programs. The record indicates that the Physician Class delegated the tasks of implementing the foregoing physical therapy programs to trained, supervised technicians.

■ SEPTA, a self-insurer pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL),[1] is responsible for providing first-party medical benefits to individuals injured in a motor vehicle accident involving a SEPTA vehicle, pursuant to § 1712(1) of the MVFRL.[2] In approximately August 1997, SEPTA adopted a policy of refusing to pay first-party medical benefits for physical therapy procedures for its insureds, unless the person providing the physical therapy was licensed pursuant to the Pennsylvania Physical Therapy Practice Act (PTPA).[3]

By order dated January 15, 1999, the Trial Court certified a mandatory class of all Pennsylvania physicians who had billed SEPTA for physical therapy/physical medicine services rendered to its insureds as part of treatment for injuries sustained in motor vehicle accidents involving SEPTA vehicles, and whose claims for reimbursement were denied by SEPTA because the physical therapy/physical medicine services were not performed personally by physicians or by other individuals licensed pursuant to the PTPA.

As a result of SEPTA's refusal to provide coverage as indicated, the Physician Class commenced an action against SEPTA in the Philadelphia County Court of Common Pleas. The litigants, however, agreed to a temporary stay of their case pending appellate resolution of *Nelson v. Nationwide Mutual Insurance Co.*, 36 Pa.D. & C. 4th 1 (1998), *aff'd*, No. 1998–924, 736 A.2d 22 (Pa.Super.Ct., filed Dec. 2, 1998), because of the similarity of legal issues between the present matter and *Nelson.* On December 2, 1998, the Superior Court of Pennsylvania affirmed the Trial Court's decision in *Nelson.* The defendant Nationwide Insurance then filed a petition for allowance of appeal to the Supreme Court, which petition was granted. However, prior to the Supreme Court's decision, the parties reached a settlement.

At this juncture, SEPTA filed a petition with the Supreme Court asking either to be substituted as a party in *Nelson v. Nationwide* for the purpose of prosecuting

1. The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701–1799.7, comprises Chapter 17 of the Vehicle Code, 75 Pa.C.S. §§ 101–9805.

2. Section 1712 of the MVFRL provides, in relevant part:

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, except recreational vehicles not intended for highway use, motorcycles … shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

(1) Medical benefit.—Subject to the limitations of section 1797 (relating to customary charges for treatment), coverage to provide for reasonable and necessary medical treatment and rehabilitative services, including, but not limited to, hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, licensed physical therapy, nursing services, vocational rehabilitation and occupational therapy, speech pathology and audiology, optometric services, medications, medical supplies and prosthetic devices, all without limitation as to time, provided that, within 18 months from the date of the accident causing injury, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

3. Act of October 10, 1975, P.L. 383, *as amended*, 63 P.S. §§ 1301–1313.

Nationwide's appeal or, alternatively, that the Supreme Court exercise its King's Bench power and assume full jurisdiction over the present case, based upon SEPTA's argument that the salient legal issue in the present matter was "identical" to that in *Nelson*. On November 19, 1999, the Supreme Court denied SEPTA's petition. Thereafter, SEPTA filed with this Court an appeal from the Trial Court's January 19, 2000 order.[4]

On appeal, SEPTA argues that the Trial Court erred in granting the summary judgment motion filed by the Physician Class and contends that under the MVFRL, motor vehicle insurers and self-insurers are required to provide coverage for **"licensed physical therapy."** Interpreting this "plain and ordinary" statutory language, SEPTA avers that the word "licensed" cannot be ignored, that the individual rendering physical therapy must be licensed and certified, and that a physician cannot delegate physical therapy to an unlicensed, uncertified individual and still expect an insurer to provide coverage. It is SEPTA's position that the MVFRL, the PTPA, the Medical Practice Act of 1985(MPA),[5] and the Osteopathic Medical Practice Act (OMPA),[6] when properly construed, all prohibit unlicensed individuals from performing physical therapy services. Accordingly, SEPTA avers that both the Superior Court's decision in *Nelson* and the Trial Court's decision in the instant matter have misconstrued the foregoing statutes by relying upon case law holding that the MVFRL is to be "construed broadly to provide the greatest possible coverage to injured claimants." *Danko v. Erie Insurance Exchange*, 428 Pa.Super. 223, 630 A.2d 1219, 1222 (1993), *aff'd per curiam*, 538 Pa. 572, 649 A.2d 935 (1994).

SEPTA further maintains that requiring an insurer to pay for physical therapy at the statutory rate, where such services are performed by unlicensed, uncertified individuals who may or may not be under a physician's supervision, is inequitable. In support of its position, SEPTA emphasizes public policy considerations, specifically the deleterious impact upon patients receiving physical therapy from unqualified personnel, as being critical to concluding that the Trial Court erred in accepting the Physician Class's argument that "custom and practice" authorized a physician to delegate physical therapy/physical medicine services even to unqualified individuals. SEPTA also argues that the record is devoid of any evidence proffered by the Physician Class, other than uncorroborated allegations, to establish that the technicians performing the physical therapy services at issue were competent and under close supervision of the physicians, so as to entitle the latter to be reimbursed for such services.

Before this Court for determination is whether the Trial Court erred in granting the motion for summary judgment filed by the Physician Class against SEPTA. In *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (1991) (citations omitted), our Supreme Court reaffirmed the principles governing the grant or denial of a summary judgment motion as follows:

> Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of summary judgment may be granted only in cases where the right is clear and free from doubt. The moving party has the burden of proving the

---

4. With regard to our scope of review, we are limited to determining whether the trial court committed an error of law or abused its discretion. *Sicuro v. City of Pittsburgh*, 684 A.2d 232 (Pa.Cmwlth.1996).

5. Act of December 20, 1985, P.L. 457, 63 P.S. §§ 422.1–422.45

6. Act of October 5, 1978, P.L. 1109, 63 P.S. §§ 271.1–271.18.

nonexistence of any genuine issue of material fact. The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Rule 1035 also provides that "[w]hen a motion for summary judgement is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d). Therefore, where a motion for summary judgment has been made and properly supported, parties seeking to avoid imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial.

■ In the present matter, upon review of the record, we disagree with the Trial Court's conclusions and rationale in granting the summary judgment motion, even though we may conflict with the Superior Court's affirmance of the Trial Court's decision in *Nelson,* which also addressed an insurer's responsibility to pay for physical therapy services performed by unlicensed individuals.

In reaching our decision, we look to both the express statutory language and the legislative intent of Section 4(b.1) of the PTPA, 63 P.S. § 1304(b.1), that provides:

*It shall be a violation of this act for any person or business entity to utilize in connection with a business name or activity the words "physical therapy," "physical therapist," "physiotherapy," "physiotherapist" or similar words and their related abbreviations which imply directly or indirectly that physical therapy services are being provided, including the billing of physical therapy ser-* *vices, unless such services are provided by a **licensed physical therapist in accordance with this act** : Provided, however, That nothing in this section shall limit a physician's authority to practice medicine or to bill for such practice nor limit a chiropractor's authority to practice chiropractic or to bill for such practice.*

(Emphasis added).

The above section clearly expresses the legislative intent that physical therapy services are to be provided by individuals *licensed* under the PTPA. Interpretation of the above section was unequivocally addressed in *Bureau of Professional and Occupational Affairs v. State Board of Physical Therapy,* 701 A.2d 292, 294 (Pa. Cmwlth.1997) *affirmed,* 556 Pa. 268, 728 A.2d 340 (1999), wherein this Court stated:

In construing Section 4 of the Act and in ascertaining the meaning and legislative intent, we turn to the applicable rules of statutory construction for guidance. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Unionville–Chadds Ford School District v. Rotteveel,* 87 Pa.Cmwlth. 334, 487 A.2d 109 (1985). **When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded.** 1 Pa.C.S.1921(b).

**From our review of the plain language of the statute, Section 4 of the Act clearly forbids any person to "hold himself out ... in any manner whatsoever" as being able to practice physical therapy in this Commonwealth unless licensed under the Act. These limitations have clearly been delineated by the Legislature and must be given effect as written.** Thus, even though a chiropractor is licensed to practice chiropractic procedures and certified to perform adjunctive procedures, many of which are performed by physical therapists, chiropractors cannot

advertise or hold themselves out as being able to practice physical therapy. (Emphasis added) (footnote omitted).

We note that prior to *Nelson,* our courts uniformly recognized and upheld the PTPA's requirements regarding licensure as reflected in *Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super. 162, 381 A.2d 164, 168–69 (1977) (footnote omitted), where the Superior Court stated:

The public has an interest in assuring that those claiming to be qualified to follow a doctor's orders are in fact so qualified, and accept responsibility for their actions.

This interest is manifested by the Physical Therapy Practice Act, Act of October 10, 1975, P.L. 383, No. 110, § 1, 63 P.S. § 1301 *et seq.,* which provides for the examination and licensing of physical therapists. The Act provides: "Any person licensed under this act as a physical therapist shall not treat human ailments by physical therapy or otherwise except by the referral of a person licensed in this State as a physician ..." 63 P.S. 1309. This provision reflects the legislature's recognition that a physical therapist is in a sense part of the medical profession; the therapist's expertise lies in the same realm as the doctor's, and the therapist's errors may do as much harm as the doctor's.

More recently, the parameters governing the practice of physical therapy were restated by the Supreme Court when reaffirming this Court's 1997 decision in *Bureau of Professional and Occupational Affairs v. State Board of Physical Therapy,* 556 Pa. 268, 274, 728 A.2d 340, 343 (1999), as follows:

Since the enactment of the PT [PA] in 1975, the practice of physical therapy has been a regulated and licensed profession. No longer is physical therapy understood to be merely a generic term for physical treatment. Rather, it consists of a statutorily defined set of activities. ... When the public encounters an advertisement for physical therapy, its rightful expectation is that the therapy consists of services that physical therapists are licensed to perform, and that the services will in fact be performed in a lawful manner by one who is licensed to provide such services.

Unarguably, considering the foregoing precedent, in which the courts have consistently reaffirmed the fact that the PTPA requires those who administer physical therapy services to be licensed, we cannot concur with the Trial Court's conclusion that if such services are delegated to persons, whether licensed under the PTPA or not, who are supervised by the delegating physician, an insurer is responsible for paying for such services.

Accordingly, the order of the Court of Common Pleas of Philadelphia County granting the motion for summary judgment is reversed, and the matter is remanded to the Court of Common Pleas for appropriate proceedings to determine the merits of the case.

## *O R D E R*

AND NOW, this 29th day of November 2000, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed, and the matter is remanded to the Court of Common Pleas for proceedings consistent with this opinion.

Jurisdiction relinquished.