STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Appellants

v.

Robert J. CAVOTO, Jr., Fishbone Advertising, Inc., Cavoto Chiropractors, P.C., Margaret Fisher–Catrambone, Penn Center Pain Management, Inc., Tiprof, Inc., and International Health Alliance, Inc., Appellees.

Superior Court of Pennsylvania.

Argued July 12, 2011.

Filed Nov. 21, 2011.

---

Cy Goldberg, Cherry Hill, New Jersey, for appellants.

Jack W. Coopersmith, Media, for appellees.

BEFORE: STEVENS, P.J., MUSMANNO, and FITZGERALD*, JJ.

OPINION BY STEVENS, P.J.:

Appellants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, file this interlocutory appeal from the order entered in the Delaware County Court of Common Pleas, which denied Appellants' post-trial motion for relief. On appeal, Appellants challenge the court's decision to find in favor of Appellees, Robert J. Cavoto, Jr., Fishbone Advertising, Inc., Cavoto Chiropractors, P.C., Margaret Fisher–Catrambone, Penn Center Pain Management, Inc., Tiprof, Inc., and International Health Alliance, Inc.,[1] on Count I of Appellants' amended complaint regarding Appellants' obligation to pay for services provided by unlicensed chiropractic personnel. We hold that the Chiropractic Practice Act ("CPA")[2] and the Motor Vehicle Financial Responsibility Law ("MVFRL")[3] permit licensed chiropractors to delegate certain adjunctive procedures to unlicensed support personnel and seek reimbursement from insurers, as long as such procedures are performed under the direct supervision of a licensed chiropractor. However, such determinations must be made on a case-by-case basis, in which the trial court must evaluate whether the procedure, or an aspect of the procedure in question, requires formal education or training in the practice of chiropractic. Accordingly, we affirm in part, vacate in part, and remand.

---

* Retired Justice specially assigned to the Superior Court.

1. Hereinafter, the appellees who operate as chiropractic offices will be referred to as "Appellees."

2. 63 P.S. §§ 625.101–625.1106.

3. 75 Pa.C.S. §§ 1701–1799.7.

The facts of this case are largely not in dispute. For a period of time, Appellants reimbursed Appellees for certain adjunctive procedures which Appellants later learned were performed by unlicensed members of the support staff. These procedures involved applying hot and cold packs, turning on and off a mechanical, intersegmental, traction machine, assisting in therapeutic exercise, providing electrical muscle stimulation, utilizing the ultrasound machine, and administering hydrotherapy and paraffin.[4] Appellants filed a complaint, then an amended complaint, alleging insurance fraud and unjust enrichment, and seeking restitution. Appellants also sought a declaratory judgment that the CPA and MVFRL do not provide for insurers to pay for services performed by unlicensed personnel.[5] The trial court bifurcated the claims and held a hearing on, *inter alia*, the declaratory-judgment claim involving unlicensed support personnel.

The court found in Appellees' favor on July 13, 2009. Appellants filed post-trial motions on July 31, 2009, then filed two notices of appeal on August 6, 2009, both of which this Court subsequently quashed *sua sponte*.[6] Appellants also filed, on August 6, a petition for determination of finality pursuant to Pennsylvania Rule of Civil Procedure 341(B)-(C). The trial court originally denied the petition, but subsequently amended the order after Appellants petitioned the court to certify the appeal as an appealable interlocutory order pursuant to Pennsylvania Rule of Appellate Procedure 311. The court thus deemed the appeal interlocutory on September 4, 2009.

On September 24, 2009, the court formally denied Appellants' motion for post-trial relief. On October 8, 2009, however, the court amended the order, indicating that it granted Appellants' request to file post-trial motion *nunc pro tunc*, but denied the motion nonetheless. Appellants filed the instant notice of appeal on October 21, 2009. The trial court ordered, and Appellants timely filed, a Pennsylvania Rule of Appellate Procedure 1925(b) statement. The court filed a responsive opinion, relying in large part on an unpublished memorandum filed by the United States District Court from the Eastern District of Pennsylvania, *State Farm Mut. Auto. Ins. Co. v. All–Care Chiropractic,* 2004 WL 1446033 (E.D.Pa.2004) (memorandum), which predicted "that the Pennsylvania Supreme Court would interpret [63 P.S.] Section [625.]601 to permit licensed chiropractors to delegate adjunctive procedures to unlicensed supportive personnel performing under their direct on-premises supervision."[7] *Id.* at *5.

On appeal, Appellants contend that the CPA and MVFRL do not permit chiropractors to collect payment for services provided by unlicensed personnel. They claim that chiropractors may not delegate any adjunctive procedures to unlicensed assistants. They assert that a plain interpretation of the statutes, their legislative history, and the legislative intent indicate that all adjunctive procedures are to be performed by licensed chiropractors. Ap-

---

4. These procedures were listed in Appellants' post-trial motion. *See* Post Trial Mot., filed 7/31/09, at 5.

5. Appellants further sought a declaratory judgment on an interpretation of the insurance fraud statute involving payments to a referral service. That claim is not relevant to the appeal *sub judice*.

6. The appeal at 2368 EDA 2009 was quashed on October 19, 2009. The appeal at 2480 EDA 2009 was quashed on December 7, 2009.

7. In light of the trial court's Rule 311 order and its subsequent order granting permission for Appellants to file post-trial motions *nunc pro tunc,* we deem this appeal timely.

pellants thus conclude that they are not obligated to compensate Appellees for such delegated services. We disagree.

Appellants' issue involves the interpretation of various statutes. Thus, the issue involves a question of law, for which we employ a *de novo* standard of review, and our scope of review is plenary. *Scott v. Shay*, 928 A.2d 312, 313 (Pa.Super.2007). "In order to determine the relationship between [ ] two provisions ... a review of the general principles of statutory construction is appropriate." *Commonwealth v. Tareila*, 895 A.2d 1266, 1269 (Pa.Super.2006).

When we undertake statutory interpretation, our object is to ascertain and then effectuate the intention of the Legislature. 1 Pa.C.S.A. § 1921(a). When possible, this Court construes every statute so as to give effect to all of its provisions. *Id.* If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its apparent spirit. *Id.* at (b). However, when the words of a statute are not explicit, this Court must determine what it was that the General Assembly intended. *Id.* at (c). We then apply the legislators' intent when interpreting the law in question. *See id.* at (a), (b), (c).

When determining legislative intent, there are a number of factors that may be helpful. *See* 1 Pa.C.S.A. § 1921(c) (listing factors to consider). Among these are the occasion, necessity and circumstances of the enactment of the statute, the mischief to be remedied and the object to be attained thereby. Also important are the consequences of our interpretation. More specifically, we must consider whether that interpretation furthers the Legislature's purpose. *See id.*

*Scott,* 928 A.2d at 313–14 (some citations omitted).

The relevant statute in the MVFRL provides:

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ... shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

(1) **Medical benefit.**—Subject to the limitations of section 1797 (relating to customary charges for treatment), coverage to provide for reasonable and necessary medical treatment and rehabilitative services, including, but not limited to ... chiropractic ... all without limitation as to time, provided that, within 18 months from the date of the accident causing injury, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury. Benefits under this paragraph may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

75 Pa.C.S. § 1712(1).

The MVFRL does not provide the specific definition for some of the terms in Section 1712(1). We therefore turn to the relevant statutes in the CPA:

§ 625.102. **Definitions**

**"Adjunctive procedures."** Physical measures such as mechanical stimulation, heat, cold, light, air, water, electricity, sound, massage and mobilization.

\* \* \*

**"Chiropractic."** A branch of the healing arts dealing with the relationship between the articulations of the vertebral column, as well as other articulations,

and the neuro-musculo-skeletal system and the role of these relationships in the restoration and maintenance of health. The term shall include systems of locating misaligned or displaced vertebrae of the human spine and other articulations; the examination preparatory to the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the adjustment or manipulation of such misaligned or displaced vertebrae and other articulations; the furnishing of necessary patient care for the restoration and maintenance of health; and the use of board-approved scientific instruments of analysis, including X-ray. The term shall also include diagnosis, provided that such diagnosis is necessary to determine the nature and appropriateness of chiropractic treatment, the use of adjunctive procedures in treating misaligned or dislocated vertebrae or articulations and related conditions of the nervous system, provided that, after January 1, 1988, the licensee must be certified in accordance with this act to use adjunctive procedures; and nutritional counseling, provided that nothing herein shall be construed to require licensure as a chiropractor in order to engage in nutritional counseling. The term shall not include the practice of obstetrics or gynecology, the reduction of fractures or major dislocations, or the use of drugs or surgery.

63 P.S. § 625.102.

### § 625.304. Certification to use adjunctive procedures

(a) **Qualifications.**—In addition to its other powers and duties under this act, the board [8] shall have the power and

duty to certify qualified licensees to use adjunctive procedures....

63 P.S. § 625.304(a).

### § 625.601. Supportive personnel

Nothing in this act shall prohibit a licensed chiropractor from utilizing the assistance of unlicensed supportive personnel performing under the direct on-premises supervision of a licensed chiropractor, provided that a chiropractor may not delegate any activity or duty to such unlicensed individuals which requires formal education or training in the practice of chiropractic or the knowledge and skill of a licensed chiropractor.

63 P.S. § 625.601.

Appellants' primary source of contention is the determination of what constitutes compensable "chiropractic" services under Section 1701(1) of the MVFRL. Because the MVFRL does not define the scope of the term "chiropractic," Appellants target the definition provided in Section 625.102 of the CPA, which includes "the use of adjunctive procedures." *See* 63 P.S. § 625.102. This definition is followed by Section 625.304, which grants the Board "the power and duty to certify qualified licensees to use adjunctive procedures." *See* 63 P.S. § 625.304. According to Appellants, Sections 625.102 and 625.304, when read together, mandate unambiguously that only licensed chiropractors may perform adjunctive procedures.

We cannot agree with Appellants' interpretation of the relevant statutes. Although Section 625.304 grants the Board the power to certify chiropractors in the **use** of adjunctive procedures, neither Section 625.304 nor any other section of the CPA proscribes any particular individual from the **performance** of adjunctive proce-

---

**8.** Section 625.301 establishes "within the Department of State the State Board of Chiropractic." 63 P.S. § 625.301(a). The State Board of Chiropractic shall hereinafter be referred to as "the Board."

dures. *See* 63 P.S. § 625.102 (including "the **use** of adjunctive procedures" (emphasis added)); 63 P.S. § 625.304(a) (granting the Board "the power and duty to certify qualified licensees to **use** adjunctive procedures" (emphasis added)). Such language contrasts with that chosen by the legislature in crafting Section 625.601, which permits licensed chiropractors to "**utiliz[e]** the assistance of unlicensed supportive personnel **performing** under the direct on-premises supervision of a licensed chiropractor." *See* 63 P.S. § 625.601 (emphases added).

The legislature's employment of "use" in the certification sections and "perform" in the delegation section is significant. Webster's Ninth New Collegiate Dictionary provides the following definitions:

per·form [ ] *vb* . . . **1:** to adhere to the terms of: FULFILL <~a contract> **2:** CARRY OUT, DO **3 a:** to do in a formal manner or according to prescribed ritual **b:** to give a rendition of: PRESENT ~*vi* **1:** to carry out an action or pattern of behavior: ACT, FUNCTION **2:** to give a performance: PLAY . . . .

¹ use [ ] *n* . . . **1 a:** the act or practice of employing something: EMPLOYMENT, APPLICATION <he made good ~of his spare time> **b:** the fact or state of being used <a dish in daily ≳ **c:** a method or manner of employing or applying something <gained practice in the ~of the camera> **2 a** (1): habitual or customary usage (2): an individual habit or group custom **b:** a liturgical form or observance; *esp:* a liturgy having modifications peculiar to a local church or religious order **3 a:** the privilege or benefit of using something <gave him the ~of her car> **b:** the ability or power to use something (as a limb or faculty) **c:** the legal enjoyment of property that consists in its employment, occupation, exercise, or practice <she had the ~of

the estate for life> **4 a:** a particular service or end <put learning to practical ≳ **b:** the quality of being suitable for employment <saving things that might be of ≳ **c:** the occasion or need to employ <took only what they had ~for> **5 a:** the benefit in law of one or more persons; *specific:* the benefit or profit of property established in one other than the legal possessor **b:** a legal arrangement by which such benefits and profits are so established **6:** a favorable attitude: LIKING <had no ~for modern art>

² **use** [ ] *vb* . . . **1** *archaic:* ACCUSTOM, HABITUATE **2:** to put into action or service: avail oneself of: EMPLOY **3:** to consume or take (as liquor or drugs) regularly **4:** to carry out a purpose or action by means of: UTILIZE; *also:* MANIPULATE 2b <*used* him only as a means up the corporate ladder> **5:** to expend or consume by putting to use **6:** to behave toward: act with regard to: TREAT <*used* the prisoners cruelly> **7:** STAND 1d <the house could ~a coat of paint> ~*vi*—used in the past with *to* to indicate a former fact or state <claims winters *used* to be harder> . . . .

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 873, 1299 (1987).

■ These definitions indicate that when one employs the word "perform," the intention is to note the action itself, as evidenced by such definitions as "carry out," "do," and "act." *See id.* at 873. Meanwhile, as either a noun or a verb, the word "use" may be an indirect indicator of the action itself, as evidenced by such definitions as, "[T]he method or manner of . . . applying something," "[T]o carry out a purpose or action **by means of**," or, "[T]he privilege or benefit of using something." *See id.* at 1299 (emphasis added). By these definitions of "use," one may consider a chiropractor to be "using" adjunctive

procedures merely by availing herself of these procedures, whether performed by herself or by a staff member. Through a plain reading of the statutes, we cannot agree with Appellants that the statutes unambiguously forbid unlicensed staff members from performing adjunctive procedures.[9]

We agree with Appellants' alternative argument, however, that the language is sufficiently ambiguous to warrant an examination of the legislature's intent in enacting Section 625.601. The dictionary contains definitions of "use" that could, in some situations, be considered a synonym of "perform" or "performance." *See id.* (defining "use" as, *inter alia,* "[A] particular service or end," or, "[A]ct with regard to"). The word "use" in Sections 625.102 and 625.304 may well conflict with the delegation rights prescribed by Section 625.601, in regard to adjunctive procedures. Accordingly, we will examine the evidence cited by the parties and courts to determine the legislators' intent. *See Scott,* 928 A.2d at 313–14.

The parties and courts rely primarily on the comments of various legislators who presented the proposed language of Section 625.601 to the legislative body. Before examining those comments, a review of the history of Senate Bill 1585 is in order. As the *All–Care* court noted, and about which the parties appear to agree, Senate Bill 1585 was triggered by a letter from the Board, dated May 22, 1996, in which the Board informed a chiropractor:

> To perform adjunctive procedures, a licensed chiropractor must be certified, in addition to his chiropractic license, to perform adjunctive procedures. As the Chiropractic Practice Act does not authorize chiropractors to delegate functions to or to supervise chiropractic assistants or other unlicensed persons, ... all chiropractic procedures and adjunctive procedures must be personally provided by the licensed/certified chiropractor.

Letter from Deborah B. Eskin, Counsel, State Board of Chiropractic, to Greg Miller, D.C. (May 22, 1996).

Senate Bill 1585 thus proposed initially an entire subsection devoted to a "chiropractor assistant," who would be required to pass an examination distributed by the Board. *See* S.B. 1585 (printer no. 2078), 180th Session (introduced June 5, 1996). This version did not include any reference to adjunctive procedures, instead stating generally that assistants may perform only tasks that are assigned or delegated by a licensed chiropractor and under the supervision of the chiropractor. *See id.* After some changes, the Senate passed the bill and sent it to the House for its consideration. The House amended the bill, providing namely that a certified chiropractor "may delegate to a chiropractic assistant those activities necessary to assist a chiropractor in the use of adjunctive procedures," in addition to changing the language of and re-ordering the remaining subsections. *See* S.B. 1585 (printer no. 2419), 180th Session (introduced Nov. 18, 1996). Soon thereafter, the language was significantly condensed, reducing language that originally constituted approximately eighty lines to what now appears as Section 625.601, which takes up eleven lines.

---

9. This interpretation is bolstered by the fact that Section 625.601 refers to chiropractors "**utilizing** the assistance of unlicensed supportive personnel **performing** under ... supervision." 63 P.S. § 625.601 (emphases added). Webster's Dictionary, meanwhile, provides one definition of "use" as to utilize. *See* Webster's Ninth New Collegiate Dictionary 1299 (1987). The legislature's use of both "utilize" and "perform" in the same sentence indicates that it considered these terms to be distinct.

When this final language was presented to the House of Representatives, Representative Ralph Kaiser presented the following concern, to which Representatives William R. Lloyd, Jr., and Mario J. Civera, Jr., responded:

Mr. KAISER. Thank you, Mr. Speaker.

The question I have, will this [bill] allow someone who has no training to perform massages in a chiropractor's office?

Mr. LLOYD. Mr. Speaker, the language of the amendment which was put in in [sic] the Appropriations Committee prohibits a chiropractor from delegating anything which requires formal education or training in the practice of chiropractic or knowledge and skill of a licensed chiropractor.

Now, under current State law, it is not a requirement that a person who is a massage therapist who wants to practice on his or her own, there is no requirement to get a license.

My opinion, and it is my opinion only, would be that if a chiropractor referred a patient outside his office to someone who was a massage therapist who has his or her own practice and is not required to be licensed, that this bill would allow that. I think it is unclear what will happen in the situation in which the massage therapist is actually an employee of or working in the office of the chiropractor.

\* \* \* \* \* \*

In any event, I think it is unclear what the ruling would ultimately be on the question of delegation to a massage therapist who was an employee or was otherwise actually physically present in the chiropractor's office.

Some people have talked about something called chiropractic massage. If chiropractic massage is in fact a course of treatment which requires education and training as a chiropractor, then it would not be appropriate for that to be delegated under this bill and that legally could not be done.

\* \* \* \* \* \*

Mr. KAISER. Thank you, Mr. Speaker.

I feel that chiropractors serve a need in the medical field, but unfortunately, I am against this bill just from the fact that you are having people who are not trained become an individual in that doctor's office who may be able to give a massage. Basically, you are telling someone from the street, come on in, and you are ready to give massages. Well, I can tell you one thing, Mr. Speaker: 2 years ago I had a constituent that went to a person who gave massages and he was not certified. That man ended up in prison.

I think the whole field of those individuals who perform massages should be licensed, and that is why I am against this bill. Overall, I support chiropractors. I think they do a good job. They perform their function in the medical field, but I am against this particular bill. Thank you, Mr. Speaker.

The SPEAKER. The gentleman, Mr. Civera.

Mr. CIVERA. Thank you, Mr. Speaker.

Mr. Speaker, when the committee dealt with SB 1585 when it came over from the Senate, number one is, what some of the members might not be sure of, that the chiropractor assistant is not allowed to do a procedure where you would directly apply the heat, you would directly do a massage. That is not what the intent of this legislation is.

When the bill came over from the Senate, there was language in the bill that had educational requirements in it. The Governor's Office did not agree with that. The Department of State did not agree with that. What we got from the committee was this, that if we did not respond to what SB 1585 and some of the things that the House corrected in that, that those people out there—and rightfully so—if a complaint came in from the general public, that those chiropractors would be cited because they are in violation of the law, and in fact they are.

So what we did here was the procedures, injective procedures,[10] that they are what the chiropractor's assistant is prohibited from doing. They only do assistance, and what I mean by that is that if they turned on a heat pad or they turned it off under the direction of the chiropractor, that basically is what is in SB 1585.

H.R. 180–62, Reg. Sess., at 2477–78 (Pa. 1996). The House of Representatives approved the bill by a vote of 195 to 6. *Id.* at 2478.

Upon presentation to the Senate, Senator Roy C. Afflerbach spoke in favor of the amended bill:

Senator AFFLERBACH. Mr. President, I support the motion to concur and merely wish to put a clarifying statement in the record. There had been some confusion about this bill and the substantial amendment that was made by the House of Representatives. I can assure the Members of the Chamber that this bill has now been agreed to by all of the professional associations that are directly affected by it. In addition to that, it has been agreed to by the Governor and the Department of State.

Essentially, the bill remedies a legal advisory opinion that was rendered earlier this year in response to an inquiry to the State Board of Licensure and the Bureau of Licensure.

Essentially what the amendment says is that doctors of chiropractic do in fact have authority to utilize assistance and supportive personnel so long as those individuals are not delegated to duties that require the education, training, or skill and knowledge of a doctor of chiropractic. Now, that essentially means that these individuals will be able to do those kinds of things which do not permit discretion or exercise of independent judgment with respect to the application or efficacy of chiropractic treatment, and the doctor of chiropractic indeed remains responsible through direct, on-premise supervision in assuring that the supportive personnel to whom he has delegated duties do not modify or otherwise deviate in the performance of those duties from the explicit instructions of the doctor.

As I indicated, this language now remedies the legal advisory response that was rendered earlier this year and has been agreed to by all parties who have been involved in the formation of the language.

S. 180–63, Reg. Sess., at 2773 (Pa.1996). The Senate unanimously agreed to the amendments. *Id.* The next day, the Speaker *pro tempore* signed the act, and the Governor of Pennsylvania signed it into law.

In considering the *Scott* factors, it is evident that the occasion necessitating the enactment of Section 625.601 was Ms. Eskin's response to Dr. Miller regarding the delegation of duties to support personnel.

---

**10.** It appears Representative Civera actually meant adjunctive procedures, as the term "injective procedures" does not appear within the CPA.

*See* S. 180–63, *supra* at 2773 (quoting Senator Afflerbach as stating that the bill was introduced in order to remedy the legal advisory response from the Board). The mischief to remedy was the Board's response that "all chiropractic procedures and adjunctive procedures must be personally provided by the licensed/certified chiropractor." *Compare id., with* Letter from Deborah B. Eskin, *supra. See also* H.R. 180–62, *supra* at 2478. Undoubtedly, the legislature sought to correct the Board's initial perception so that chiropractors could have more freedom to delegate certain duties to support personnel.

Contrary to Appellants' assertion, we do not view the eventual omission of the statute's allowance of delegating adjunctive procedures specifically as fatal to Appellees' argument.[11] The language of Section 625.601, and the comments of Representative Lloyd, Representative Civera, and Senator Afflerbach, clearly provide that chiropractors may not delegate activities or duties requiring formal chiropractic education or training. *See* 63 P.S. § 625.601; H.R. 180–62, *supra* at 2477–78; S. 180–63, *supra* at 2773. In examining Section 625.102's definition of "chiropractic," the overwhelming majority of activities and duties defined therein, by any reasonable analysis or interpretation, would require formal chiropractic education or training. Such activities and duties clearly include examination, diagnosis, and adjustment or manipulation.

The need for formal education or training in the "use" of certain procedures and instruments is not as obvious. Nonetheless, our readings of the Representatives' and Senator's statements indicate that the majority of tasks at issue in the case *sub judice* were properly contemplated and ac-

counted for in Section 625.601. Representative Kaiser, who raised an objection to the bill, focused primarily on whether all massages should be performed by licensed individuals. Despite Representative Kaiser's concern, the House overwhelmingly approved the language of the bill. Senator Afflerbach's statement, which was followed by unanimous approval of the bill's language by the Senate, emphasized the need for chiropractors to delegate certain duties to support personnel.

Representative Civera's statement is more opaque. Appellants emphasize the following portion of his comment: "So what we did here was the procedures, [adjunctive] procedures, that they are what the chiropractor's assistant is prohibited from doing." H.R. 180–62, *supra* at 2478. At first glance, and viewed in isolation, this statement appears to support Appellants' argument and prohibit unlicensed personnel from any involvement in adjunctive procedures. By clarifying in the next sentence, however, that support personnel may turn a heat pad on or off at the direction of a licensed chiropractor, Representative Civera reiterated the same statements as Representative Lloyd and Senator Afflerbach—that support personnel could perform tasks that do not require formal chiropractic education or training.

■ In the case *sub judice*, the majority of claims involve whether chiropractors are the only individuals who may apply hot and cold packs, turn on and off a mechanical, intersegmental, traction machine, assist in therapeutic exercise, provide electrical muscle stimulation, utilize the ultrasound machine, and administer hydrotherapy and paraffin. Appellants concede that "the statutory language was necessary to

---

11. Another reasonable interpretation is that the legislature did not wish to limit delegable tasks to only adjunctive procedures, and therefore removed specific references to them.

allow chiropractors to delegate other, non-specialized duties (such as turning a heating pad on or off)." Appellants' Brief at 16. Turning a traction machine on or off clearly falls in the same category.

We conclude the other tasks at issue largely fall in the same, non-specialized category. Importantly, all these tasks must be performed "under the direct on-premises supervision of" the chiropractor, pursuant to Section 625.601. In regard to hot or cold packs, only the chiropractor may determine whether such packs should be applied, where, and how long. However, it requires no formal education or training to apply hot or cold packs according to the chiropractor's specific instructions. Similarly, most elements of applying electrical muscle stimulation, ultrasound, hydrotherapy, or paraffin do not require particularly specialized skills, as long as it is the chiropractor making the diagnosis, determining the location on the patient's body where such therapies should be applied, and the intensity of the therapy.[12]

■ Assisting in therapeutic exercise, meanwhile, may fall under either category. While some forms of assistance, such as supplying equipment or monitoring repetitions, would be innocuous, other forms of assistance, such as monitoring form or recommending equipment, may require formal education or training. In regard to this aspect of support, we acknowledge Representative Lloyd's statement that massages in a chiropractic office, particularly any form of "chiropractic massage," may require a licensed individual to perform them.[13] See H.R. 180–62, supra at 2477. For this reason, we find it necessary to vacate a portion of the trial court's order. Upon remand, the trial court should make more specialized findings and determine whether any of the procedures allegedly performed by unlicensed personnel required formal chiropractic education or training, including further inquiry by the court as to the scope of those procedures.

We emphasize, however, our holding that chiropractors may delegate certain non-specialized aspects of performing adjunctive procedures to unlicensed support personnel. The consequences of a contrary interpretation would defeat the purpose of enacting Section 625.601. Considering the number of amendments made to, and careful consideration of, the original Senate Bill 1585, in reaction to the original Board letter forbidding any delegation, it is unreasonable to conclude that the legislature approved a bill that merely allows

---

12. For example, with regard to electrical muscle stimulation, we do not consider it the legislature's intent to have required a license for someone to place an electrical node where directed to do so by the licensed chiropractor. The unlicensed individual, however, may not determine if electrical stimulation is necessary, where the nodes should be placed, or the strength of the electrical stimulation. This interpretation is supported by Senator Afflerbach's statement that unlicensed individuals could not "do those kinds of things which do not permit discretion or exercise of independent judgment...." See S. 180–63, supra at 2773.

13. Appellants' post-trial motion notes that Appellees agreed support personnel, not chiropractors, conducted the adjunctive procedures listed herein. Post Trial Mot., filed 7/31/09, at 5. That list does not include any form of massage. The declaratory judgment thus appears to apply only to the adjunctive procedures listed herein, and Appellants raise no specific argument in relation to massages. We therefore offer no conclusion on the licensing requirements of massages except that, if a conflict arises on remand as to whether unlicensed personnel performed massages, the trial court must determine whether the types of alleged massages require formal education or training in relation to the practice of chiropractic.

chiropractors to hire assistants to turn machines on and off. In the same vein, Appellants' argument, that job opportunities for licensed chiropractors would be limited if non-licensed individuals could perform adjunctive procedures, is unreasonable. Sections 625.102 and 625.304 still require chiropractors to be qualified in myriad aspects of chiropractic, and we find no reason to believe that a significant number of chiropractors would limit their practice to solely adjunctive procedures.[14] Rather, the history of Senate Bill 1585 and the statements in the General Assembly indicate convincingly that the legislature intended for chiropractors to have the ability to employ the assistance of support personnel.

Finally, Appellants cite a decision by our sister Court, the Commonwealth Court, and a separate decision by the Supreme Court of Pennsylvania in support of their argument. In the Commonwealth Court case, *Kleinberg v. Se. Pa. Transp. Auth.*, 765 A.2d 405 (Pa.Commw.2000), *aff'd*, 570 Pa. 490, 810 A.2d 635 (2002), our sister Court held that the MVFRL does not require insurers to pay for physical therapy provided by unlicensed, but trained and supervised, technicians. *Id.* at 409. This Court, of course, is not bound by decisions of the Commonwealth Court. *Signora v.*

*Liberty Travel, Inc.*, 886 A.2d 284, 291 (Pa.Super.2005). Moreover, the *Kleinberg* decision is distinguishable. The primary appellee in *Kleinberg* was a licensed osteopathic physician who, upon prescribing physical therapy, delegated the tasks to the unlicensed technicians, then submitted invoices for those unlicensed therapeutic services. *See Kleinberg, supra,* Amicus Curiae Brief, 2001 WL 34152495 at *4. Thus, the physician completely bypassed any involvement by a licensed physical therapist. Section 1712 of the MVFRL, however, lists "**licensed** physical therapy," specifically, as a reimbursable service. *See* 75 Pa.C.S. § 1712(1) (emphasis added). Although the Commonwealth Court's decision delves into the purpose of the Physical Therapy Practice Act ("PTPA"),[15] some of which may conflict with our holding *sub judice*, the essential factor is that no therapy was provided by a licensed physical therapist; thus, there was no dispute over what tasks a licensed physical therapist could delegate to support personnel.[16] In the instant case, there is no allegation that licensed chiropractic service was completely subverted, and the dispute revolves around which tasks a licensed chiropractor may delegate to her support staff. Accordingly, we find Appellants' reliance on *Kleinberg* unavailing.

14. Moreover, as we observe and hold *supra*, even adjunctive procedures that may be performed by unlicensed personnel require a chiropractor's direction and supervision, thereby leaving intact the licensed chiropractor's involvement in all aspects of the adjunctive procedure.

15. 63 P.S. §§ 1301–1313.

16. In fact, the PTPA's analogous section to the CPA's Section 625.601, regarding support personnel, would not have applied, as that section permits licensed physical therapists, not physicians, to delegate tasks that do not require formal education or training. *See* 63 P.S. § 1309.2 (2000) ("Nothing in this act shall prohibit a **licensed physical therapist** from assigning or delegating various activities to other individuals...." (emphasis added)). Moreover, we note that the PTPA specifically provides for certification of physical therapy assistants, thereby restricting even further the need for, or role of, unlicensed support personnel, whereas the legislature initially thought of providing for certified chiropractic assistants, but eventually declined to do so. *Compare* 63 P.S. § 1309.1 (2000) (noting specific certification requirements for physical therapy assistants), *with* S.B. 1585 (printer no. 2451), 180th Session (re-reported Nov. 20, 1996) (crossing out all references to chiropractic assistants).

For similar reasons, Appellants' reliance on *Commonwealth of Pennsylvania, Bureau of Prof'l & Occupational Affairs v. State Bd. of Physical Therapy*, 556 Pa. 268, 728 A.2d 340 (1999) ("*Physical Therapy* "), is inapt. In *Physical Therapy*, chiropractors who performed physical therapy in their offices challenged a ruling that they could not advertise their performance of physical therapy. *Id.* at 270, 728 A.2d at 341. In ruling against the chiropractors, our Supreme Court found that chiropractors, while performing some of the same duties as physical therapists, were not properly qualified or licensed to perform other services that licensed physical therapists must be certified to perform. *Id.* at 275, 728 A.2d at 344 ("Allowing chiropractors to advertise that they perform 'physical therapy' would mislead the public into believing that chiropractors are actually licensed and able to perform the full range of such therapy."). The Court's decision did not in any way address the role of support personnel or what duties properly licensed therapists may delegate to them. *Physical Therapy* is therefore distinguishable.

Appellants nonetheless contend that *Kleinberg* and *Physical Therapy* promote a public policy that unlicensed individuals may not provide treatment. *See* Appellants' Brief at 25. The import of *Kleinberg* and *Physical Therapy*, however, is that licensed physical therapists must be involved in some manner of offered physical-therapy services, and may not be completely subverted. Neither case eliminates or even limits the role of support personnel; instead, these cases, for policy reasons, prevent other professions from masquerading as physical therapists. Such concerns are not present in the case *sub judice*, where chiropractors retain significant responsibility in the treatment of their patients despite the presence of support personnel.

Accordingly, we conclude that the primary impact of the trial court's declaratory-judgment order is correct, that is, unlicensed, chiropractic-support personnel may perform aspects of adjunctive procedures that do not require specialized, chiropractic education or training. The portion of the order involving clearly non-specialized procedures is therefore affirmed. We vacate the order in part, however, and remand for a determination as to whether certain procedures allegedly performed by unlicensed personnel required formal, chiropractic education or training.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.