J-S19039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HORACE DELOATCH, | : | |
| | : | |
| Appellant | : | No. 1028 EDA 2019 |

Appeal from the PCRA Order Entered March 22, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1041181-1990

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED JUNE 30, 2020**

Horace Deloatch ("Deloatch") appeals from the Order denying his second Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Counsel for Deloatch has filed an Application to Withdraw as counsel, and a No-Merit Brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). We grant counsel's Application to Withdraw, and affirm the Order of the PCRA court.

In its Opinion, the PCRA court set forth the factual and procedural history of this case as follows:

> On July 2, 1989, a week after the decedent, Shawn Jones [("Jones")] graduated from high school, at approximately 1:30 in the morning, [Deloatch] and his three co-conspirators went to the Wilson Park Project in South Philadelphia in a stolen van.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

[Deloatch] was armed with a semi[-]automatic revolver[,] and [his co-defendant], Rashid Parks [("Parks"),] had a shotgun.

….

Parks and [Deloatch] were seated on the right side of the van. [Deloatch] was in the front seat. Parks was directly behind him. The van slowly drove past a group of teenagers that included [Deloatch,] who were unarmed and chatting next to a mailbox. [Deloatch] and Parks opened fire. As at least ten shots rang out, the teenagers either fled or fell to the ground. A shell from [Parks's] shotgun struck [Jones] in the chest[,] causing his death. Sixteen-year-old Lamont Davis sustained a bullet wound to his right hand. [Deloatch] and his cohorts then fled the scene in a van.

….

[I]n the course of their investigation of the scene, police recovered the shotgun shell casing from the bullet that killed [Jones], along with cartridges and projectiles from a .25, and .38, and .45 caliber semiautomatic revolvers. In addition, spent projectiles from the same area were recovered from the wall and a door of a nearby residence, which was occupied at the time of the shooting. Numerous witnesses at the trial testified that [Jones] had no prior arguments or relationship with [Deloatch] or Parks. There was some testimony during trial that there were several shootings between two rival gangs.

On August 23, 1990, … [Deloatch] was arrested and charged with [m]urder and related offenses. On May 13, 1992, before the Honorable David Savitt [("Judge Savitt")], a jury convicted [Deloatch] of [f]irst-[d]egree [m]urder and [p]ossession of an [i]nstrument of [c]rime ("PIC").[2] On that same date, Judge Savitt imposed the then-mandatory sentence of life imprisonment [without the possibility of parole] for [f]irst-[d]egree [m]urder, and two and one-half to five years imprisonment for PIC.

_____

2 *See* 18 Pa.C.S.A. §§ 2502(a), 907.

On February 11, 2016, [Deloatch] filed a [PCRA P]etition challenging the legality of his life[-]without[-]parole sentence.[3] On August 8, 2017, [the PCRA court] granted [Deloatch] post-conviction relief and vacated his May 13, 1992[,] sentence. On that same date, [the trial court] imposed a sentence of thirty-five years to life term of imprisonment for [f]irst-[d]egree [m]urder.[FN]

---

[FN] [The trial court] imposed no further penalty on the remaining PIC charge.

---

[Deloach filed a *pro se* PCRA Petition.] On December 26, 2018, PCRA counsel timely filed a[n] Amended Petition on [Deloatch's] behalf. On March 22, 2019, after conducting an evidentiary hearing, [the PCRA court] dismissed the instant [P]etition. On April 8, 2019, [Deloatch] filed a timely Notice of Appeal.

PCRA Court Opinion, 5/29/19, at 1-2 (quoting N.T., 8/8/17, at 97-99) (two footnotes added; one footnote in original; paragraphs reordered).

Deloatch presents the following claims of ineffective assistance of counsel for our review:

Whether trial counsel was ineffective for (a) failing to file a [m]otion for [r]econsideration of [s]entence and (b) failing to file an appeal where [Deloatch] had viable challenges to [(1)] the discretionary aspects of sentence, [(2)] the imposition of a life sentence as a maximum sentence[,] and [(3)] the denial of funding [for] an expert witness[?]

---

[3] *See Miller v. Alabama*, 567 U.S. 460, 465 (2012) (concluding that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'").

No-Merit Brief at 6.

Before we consider these claims, we first address whether PCRA counsel has met the requirements to withdraw from representation under ***Turner***/***Finley***. To withdraw from representation under ***Turner***/***Finley***,

> counsel must review the case zealously. ***Turner***/***Finley*** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner[] (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted). If appellate counsel has satisfied the above requirements, this Court must then conduct its own review of the record and render an independent judgment as to whether the appeal is without merit. ***Commonwealth v. Walters***, 135 A.3d 589, 591 (Pa. Super. 2016).

Here, Deloatch's counsel has complied with each of the above requirements. Deloatch has not filed a response to PCRA counsel or with this Court, and has not hired separate counsel. Accordingly, we next independently review the claims raised by Deloatch, to determine whether the appeal lacks merit.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's

determination is free of legal error. ***Commonwealth v. Phillips***, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Id.***

Deloatch presents claims asserting the ineffective assistance of prior counsel. In addressing Deloatch's claims, we are cognizant that counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations and quotation marks omitted). "We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1273 (Pa. 2016).

Deloatch first claims that his re-sentencing counsel rendered ineffective assistance by not filing a requested motion for reconsideration of sentence, or an appeal. No-Merit Letter at 20. Specifically, Deloatch argues that the PCRA

court improperly credited his re-sentencing counsel's testimony that, in subsequent discussions with Deloatch, Deloatch had changed his mind about filing a post-sentence motion and appeal. *Id.* at 20-21. Deloatch contends that "subsequent communications he had with his attorney were designed to confuse and dissuade him from the course [Deloatch] firmly believed was in his best interest." *Id.* at 20. According to Deloatch, his re-sentencing counsel should have immediately abided by Deloatch's request that a motion and appeal be filed, "without further discussion." *Id.*

Deloatch asserts that there are meritorious claims that he would have raised on direct appeal. *Id.* at 21. Specifically, Deloatch would have challenged the imposition of a life sentence as his maximum sentence, the discretionary aspects of sentencing, and the denial of funding for an expert to testify at resentencing. *Id.*

"[T]he unjustified failure to file a requested direct appeal is ineffective assistance of counsel *per se* and … an appellant need not show that he likely would have succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness." *Commonwealth v. Bath*, 907 A.2d 619, 622 (Pa. Super. 2006). To determine whether counsel is ineffective for failing to file a direct appeal, the court must determine whether the defendant established that "he requested an appeal and that counsel disregarded that request." *Id.* at 622 (citation omitted).

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. **See** PCRA Court Opinion, 5/29/19, at 6-9. We agree with the sound reasoning of the PCRA court, as set forth in its Opinion, and affirm on this basis as to Deloatch's first claim. **See id.**

In his second claim, Deloatch specifically challenges counsel's failure to file a post-sentence motion and direct appeal challenging the legality of his maximum sentence of life in prison. No-Merit Brief at 26. According to Deloatch, the trial court had the authority to impose less than a life sentence for a juvenile convicted of first-degree murder, where that conviction occurred prior to June 24, 2012. **Id.** Deloatch appears to argue that because a resentencing judge has the authority to impose less than a life sentence on a juvenile convicted of first-degree murder prior to June 25, 2012, the imposition of a maximum life term is cruel and unusual punishment. **See id.** at 26-27.

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. PCRA Court Opinion, 5/29/19, at 9-10. We agree with the sound reasoning of the PCRA court and affirm on the basis of the PCRA court's Opinion with regard to this claim. **See id.**

Finally, Deloatch argues that the PCRA court improperly failed to provide additional funding so that Dr. Susan Rushing ("Dr. Rushing") could offer expert testimony at resentencing. No-Merit Brief at 27. According to Deloatch, if Dr. Rushing had testified, then he would have received a lesser sentence. **Id.**

In its Opinion, the PCRA court addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 5/29/19, at 10. Further, the PCRA court stated the following, with regard to this issue:

During the [re]sentencing hearing, resentencing counsel submitted a mitigation report from mitigation expert, Michelle Connor [("Connor")], and a report from Dr. [] Rushing, who conducted a psychiatric evaluation. Judge Streeter-Lewis approved funding for Dr. Rushing for costs not to exceed $6,000, and an additional $2,000 for her travel expenses. [The trial court] received a fee petition in November 2017 requesting $6,000 to be paid to Dr. Rushing, despite her bill totaling $11,925….

\* \* \*

Resentencing counsel [] recalled that, in anticipation for the resentencing hearing, he intended to call Dr. Rushing as an expert witness, but ultimately concluded that her testimony would not have included anything beyond the conclusions she made in her expert report, which was submitted as evidence during the resentencing hearing. In anticipation of a possible notice of appeal, resentencing counsel considered raising the issue of whether Dr. Rushing should have been provided with additional funding to testify, but ultimately concluded that her testimony was not something that would change the outcome of the case. [N.T., 3/22/19,] at 37-38, 49-50.

*Id.* at 3-4.

We agree with and adopt the PCRA court's reasoning and conclusion as set forth in its Opinion and above. *See id.* at 3-4, 10. Further, after independently reviewing the record, we agree with PCRA counsel that all of Deloatch's claims lack merit. We therefore grant counsel's Application to Withdraw from representation, and affirm the Order of the PCRA court.

Application to Withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2020

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-1041181-1990

                 : 

                 : 

v.                CP-51-CR-1041181-1990 Comm. v. Deloatch, Horace
Opinion

**FILED**

HORACE DELOATCH

8275153021

**MAY 2 9 2019**

Office of Judicial Records
Appeals/Post Trial

**OPINION**

**McDermott, J.**                                  **May 29, 2019**

**Procedural History**

On August 23, 1990, the Petitioner, the then juvenile Horace Deloatch, was arrested and charged with Murder and related offenses. On May 13, 1992, before the Honorable David Savitt, a jury convicted the Petitioner of First-Degree Murder and Possession of an Instrument of Crime ("PIC"). On that same date, Judge Savitt imposed the then-mandatory sentence of life imprisonment for First-Degree Murder, and two and one-half to five years imprisonment for PIC.

On February 11, 2016, the Petitioner filed a Post-Conviction Relief Act ("PCRA") petition challenging the legality of his life without parole sentence. On August 8, 2017, this Court granted the Petitioner post-conviction relief and vacated his May 13, 1992 sentence. On that same date, this Court imposed a sentence of thirty-five years to life term of imprisonment for First-Degree Murder.[1]

On July 26, 2018, the Petitioner filed a Post-Conviction Relief Act ("PCRA") petition, which this Court treated as his first petition. On December 26, 2018, PCRA counsel timely filed

---

[1] This Court imposed no further penalty on the remaining PIC charge.

a Amended Petition on the Petitioner's behalf. On March 22, 2019, after conducting an

evidentiary hearing, this Court dismissed the instant petition. On April 8, 2019, the Petitioner

filed a timely Notice of Appeal.

**Facts**

At the August 8, 2017 resentencing hearing, the Commonwealth recited the facts of the

case as follows:

> On July 2, 1989, a week after the decedent, Shawn Jones graduated from high school, at approximately 1:30 in the morning, [the Petitioner] and his three co-conspirators went to the Wilson Park Project in South Philadelphia in a stolen van. [The Petitioner] was armed with a semiautomatic revolver and [his co-defendant], Rashid Parks had a shotgun.
>
> ...
>
> Parks and [the Petitioner] were seated on the right side of the van. [The Petitioner] was in the front seat. Parks was directly behind him. The van slowly drove past a group of teenagers that included [the decedent] who were unarmed and chatting next to a mailbox. The [Petitioner] and Parks opened fire. As at least ten shots rang out, the teenagers either fled or fell to the ground. A shell from Parks' shotgun struck [the decedent] in the chest causing his death. Sixteen-year-old Lamont Davis sustained a bullet wound to his right hand. [The Petitioner] and his cohorts then fled the scene in a van.
>
> ...
>
> [I]n the course of their investigation of the scene, police recovered the shotgun shell casing from the bullet that killed [the decedent], along with cartridges and projectiles from a .25, a .38, and .45 caliber semiautomatic revolvers. In addition, spent projectiles from the same area were recovered from the wall and a door of a nearby residence, which was occupied at the time of the shooting. Numerous witnesses at the trial testified that [the decedent] had no prior arguments or relationship with [the Petitioner] or Parks. There was some testimony during trial that there were several shootings between two rival gangs.

N.T. 8/8/2017 at 97–99.

At the March 22, 2019 evidentiary hearing, the Petitioner testified that when he spoke

with resentencing counsel at the conclusion of the resentencing hearing, he specifically requested

2

that resentencing counsel file an appeal and a Motion for Reconsideration. Two days after the resentencing hearing, the Petitioner claimed he called resentencing counsel from his counselor's office to discuss his appeal, and counsel told the Petitioner he would look over the transcripts upon receipt and determine if any issues were appealable. In the meantime, counsel told the Petitioner he would file a Motion for Reconsideration of Sentence. N.T. 3/22/2019 at 11–14.

On the date of the evidentiary hearing, resentencing counsel provided hard copies of letters he sent, dated August 14, 2017 and August 16, 2017, inquiring about the Petitioner's position with respect to filing a Notice of Appeal. The Petitioner testified that he had neither received nor seen the letters prior to the hearing. The letters were addressed to the Petitioner at his home institution, SCI Dallas, but the Petitioner alleged he was still being housed at SCI Graterford. *Id.* at 18–19.

During the evidentiary hearing, this Court took judicial notice of the following facts: During the sentencing hearing, resentencing counsel submitted a mitigation report from mitigation expert, Michelle Connor, and a report from Dr. Susan Rushing, who conducted a psychiatric evaluation. Judge Streeter-Lewis approved funding for Dr. Rushing for costs not to exceed $6,000, and an additional $2,000 for her travel expenses. This Court received a fee petition in November 2017 requesting $6,000 to be paid to Dr. Rushing, despite her bill totaling $11,925. Judge Streeter-Lewis also approved $3,500 for Connor's presence. Upon receiving a fee petition for Connor's bill totaling $6,500, this Court paid the entire total because it believed Connor's work was appropriate for this case. This Court also took judicial notice of the fact that it did not receive any *pro se* letters from the Petitioner. *Id.* at 24–26.

This Court noted that, at the conclusion of the resentencing hearing, this Court advised the Petitioner of his appellate rights and confirmed that he had no questions about his sentence or

3

his rights. This Court advised the Petitioner that if he wished to file an appeal, he needed to inform resentencing counsel. N.T. 8/8/2017 at 138.

At the March 22, 2019 evidentiary hearing, resentencing counsel recalled that that, at the conclusion of the resentencing hearing, he spoke to the Petitioner, who explained that he was not seeking an appeal or requesting that a motion for reconsideration of sentence be filed on his behalf. Resentencing counsel informed the petitioner that if he changed his mind, it would be his decision alone and he should contact resentencing counsel as soon as possible. On August 14, 2017, resentencing counsel discovered that the Petitioner attempted to make contact with him. Resentencing counsel confirmed that he had not received any missed calls on his office line, and sent a letter via overnight mail to the Petitioner to confirm his availability. On August 16, 2017, resentencing counsel spoke to the Petitioner via phone, whereupon the Petitioner confirmed that he did not wish to file a Motion for Reconsideration or Notice of Appeal in this matter. Resentencing counsel memorialized this conversation in a letter he sent to the Petitioner that day and in an email he sent to counsel within his law firm. N.T. 3/22/2019 at 39–44.

Resentencing counsel further recalled that, in anticipation of the resentencing hearing, he intended to call Dr. Rushing as an expert witness, but ultimately concluded that her testimony would not have included anything beyond the conclusions she made in her expert report, which was submitted as evidence during the resentencing hearing. In anticipation of a possible notice of appeal, resentencing counsel considered raising the issue of whether Dr. Rushing should have been provided with additional funding to testify, but ultimately concluded that her testimony was not something that would change the outcome of the case. *Id.* at 37–38, 49–50.

4

## Discussion

The Petitioner raises two issues for review, alleging that resentencing counsel was ineffective for failing to: (1) file a Motion for Reconsideration of Sentence; and (2) file a Notice of Appeal upon the petitioner's request. The Petitioner further alleges that, had his right to appeal had not been abandoned, he would have challenged: (1) the discretionary aspects of this Court's sentence; (2) the imposition of life imprisonment as a maximum sentence; and (3) the denial of funding for Dr. Rushing.

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and, (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, i.e., that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for

5

failing to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

Here, the Petitioner's claims fail because at the evidentiary hearing, resentencing counsel provided clear and credible evidence that the Petitioner specifically instructed counsel not to file either a Motion to Reconsider Sentence or a Notice of Appeal on his behalf. In a series of emails resentencing counsel provided to this Court, resentencing counsel recounted to attorneys that on August 15, 2017, the Petitioner requested that counsel file an appeal on his behalf. *See* Petitioner's Exhibit P-4. On August 16, 2017, resentencing counsel indicated that he spoke with the Petitioner again, who expressed his desire not to challenge the sentence, but to "leave the sentence in place." *Id.* During the evidentiary hearing, resentencing counsel testified that he spoke to the Petitioner at the conclusion of sentencing, who indicated that he did not seek a Motion for Reconsideration or Direct Appeal. N.T. 3/22/2019 at 39. Counsel later spoke to the Petitioner on August 15, 2017, when the Petitioner indicated that he changed his mind. *Id.* at 40. However, during a follow up call on August 16, 2017, the Petitioner confirmed that he did not want to pursue either a reconsideration motion or direct appeal. *Id.* Resentencing counsel memorialized these conversations both in emails he sent to counsel at his law firm and letters he mailed to the Petitioner. *See* Petitioner's Exhibit P-2, P-4.

Based on this testimony, this Court made a credibility determination that resentencing counsel testified truthfully and that the Petitioner in fact directed him not to file a motion for reconsideration or notice of appeal. Resentencing counsel supported his testimony with credible physical evidence demonstrating the veracity of his recollection. Under the circumstances presented at the evidentiary hearing, resentencing counsel would have no reasonable basis to file

a reconsideration motion or Notice of Appeal in the instant matter. Accordingly, the instant claim fails.

This Court further notes that the Petitioner cannot demonstrate prejudice, as his proposed claims on appeal, if preserved, would not have been successful. A defendant challenging the discretionary aspects of his sentence must establish, *inter alia,* that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Serrano,* 150 A.3d 470, 473 (Pa. Super. 2016) (*quoting Commonwealth v. Swope,* 123 A.3d 333, 337 (Pa. Super. 2015) (citations omitted)). A substantial question exists when an appellant raises "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Gonzalez,* 109 A.3d 711, 731 (Pa. Super. 2015). The consecutive nature of a defendant's sentence does not raise a substantial question. *Commonwealth v. Zirkle,* 107 A.3d 127, 134 (Pa. Super. 2014).

Where the trial court is informed by a presentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that its discretion should not be disturbed. *Commonwealth v. Bullock,* 170 A.3d 1109, 1126 (Pa. Super. 2017) (*citing Commonwealth v. Ventura,* 975 A.2d 1128, 1135 (Pa. Super. 2009)). The court need not parrot the words of the Sentencing Code, rather the sentence must reflect due consideration of the statutory conditions at the time of sentencing. *Commonwealth v. Coulverson,* 34 A.3d 125, 145 (Pa. Super. 2011). A sentencing court's indication that it reviewed a presentence report can satisfy the requirement of placing reasons for imposing the sentence on the record. *Bullock,* 170 A.3d at 1126 (*citing Commonwealth v. Burns,* 765 A.2d 1144 (Pa. Super. 2000).

7

The Supreme Court of Pennsylvania has determined that, when sentencing a juvenile facing a potential life without parole sentence, *Miller* requires the sentencing court to consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of the Defendant's participation in the crime, his family, home, and neighborhood environment, his maturity and development, past exposure to violence, drug and alcohol history, ability to deal with the police, his mental health history, his potential for rehabilitation, and the extent that familial or peer pressure may have affected him. *Commonwealth v. Batts*, 163 A.3d 410, 421, n. 5 (Pa. 2017) (*"Batts II"*) (*citing Commonwealth v. Batts*, 66 A.3d 286, 297 (Pa. 2013) (*"Batts I"*).

The Petitioner fails to raise a substantial question. At the evidentiary hearing, the Petitioner contended that he would have received a lesser sentence of at or near time served had he been resentenced at a later date, and that this Court's imposition of a 35 years to life imprisonment sentence was therefore excessive. This Court notes that, at the onset of the evidentiary hearing, the Commonwealth presented an offer of 45 years to life imprisonment, which the Petitioner rejected. This Court's sentence of 35 years to life imprisonment rendered the Petitioner eligible for parole ten years earlier than the Commonwealth's offer. This Court was unaware of the length of the Commonwealth's offer at the time of resentencing. N.T. 8/8/2017 at 14–16.

This Court imposed the Petitioner's sentence based on its own independent review of the record. Prior to resentencing, this Court reviewed a mitigation report prepared by Michelle Connor, Esq., the expert report prepared by Dr. Rushing, the Petitioner's presentence and mental health reports, and detailed sentencing memoranda submitted by both the Commonwealth and the Petitioner. *Id.* at 127; *see also* Petitioner's Exhibit (8/8/2017) P-1, P-2, P-3;

8

Commonwealth's Exhibit C-14, C-15, C-16. This Court further considered the *Miller* factors in conjunction with standard sentencing considerations, which ultimately led to this Court's determination that, while the Petitioner may be entitled to parole on this matter in the future, he was not entitled to immediate parole eligibility, given the facts and circumstances of this case, and the Petitioner's unimpressive prison record.[2] *Id.* at 127–130. The Petitioner has presented no evidence that would indicate that this Court abused its discretion, imposed a manifestly excessive sentence, or willfully ignored the appropriate sentencing considerations. For those reasons, the Petitioner's claim would fail.

The Petitioner's second proposed challenge has been thoroughly resolved in *Batts II*. In *Batts II*, the Supreme Court of Pennsylvania found that for juveniles convicted prior to Miller, a sentencing court may resentence affected defendants to a minimum term-of-years sentence and must impose a mandatory maximum sentence of life in prison, exposing defendants to parole eligibility upon the expiration of their minimum sentences. *Id.*; *see also* 61 Pa.C.S. § 6137(a)(3). In *Commonwealth v. Olds*, the Superior Court clarified that the mandatory maximum term of life imprisonment for a juvenile convicted of Second-Degree Murder does not violate the Eighth Amendment's ban on cruel and unusual punishment. 192 A.3d 1188 (Pa. Super. 2018); *see also Commonwealth v. Seskey*, 170 A.3d 1105 (Pa. Super. 2017) (a term-of-years sentence for a defendant convicted of First or Second-Degree murder prior to June 25, 2012 is illegal under *Batts II*).

This Court imposed a sentence of thirty-five years to life imprisonment. Under the recent holdings in the Superior and Supreme Court, this Court must impose a mandatory life

---

[2] The Petitioner is also serving a sentence of life without parole for an unrelated homicide he committed as an adult. This Court did not take that matter into consideration when furnishing the instant sentence, as the incident occurred after the Petitioner's involvement in the instant matter.

imprisonment maximum sentence tail. The Petitioner's claim that this Court's imposition of a maximum term of life imprisonment and lifetime parole term is unconstitutional is without merit. Nevertheless, even if this Court was not required to impose a maximum life sentence, it maintains that a maximum life sentence is appropriate in this case based on the seriousness of the offense and the threat to the public's safety posed by the Petitioner. This Court would have used its discretion to impose a maximum life sentence had this Court not been obligated to do so by statute. No further discussion is warranted.

The Petitioner finally seeks to contend that he was prejudiced by this Court's failure to secure additional funding for Dr. Rushing's testimony. As this Court recounted at the evidentiary hearing, the Honorable Kathryn Streeter Lewis provided Dr. Rushing with a total of $8,000 in funding for preparation of an expert report and travel expenses. In November 2017, Dr. Rushing requested, and this Court approved, $6,000 in funds furnished pursuant to work performed in generating an expert report. The Petitioner claims that, had additional funding been provided, Dr. Rushing would have testified at the resentencing hearing, which may have presumably altered this Court's consideration of sentence.

Dr. Rushing completed a full expert report in anticipation of the Petitioner's resentencing hearing. As stated *supra*, this Court reviewed the full report before imposing sentence. At the evidentiary hearing, resentencing counsel stated, and this Court agrees, that Dr. Rushing's live testimony was superfluous, as it would not offer anything in addition to the conclusions explained and presented in her expert report. *See* N.T. 3/22/2019 at 37 ("further testimony from Dr. Rushing would not have included or likely included anything beyond what was already in her report"). The Petitioner fails to demonstrate prejudice and, if preserved, his claim would have failed.

10

For the foregoing reasons, the judgment of this Court should be affirmed.

BY THE COURT,

_Barbara McDermott_
Barbara A. McDermott, J

11

**Commonwealth v. Horace Deloatch, CP-51-CR-1041181-1990**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Tracey Kavanagh, Esquire

**Type of Service:**          **DA's Courthouse Assigned Box**

Gary S. Server, Esq.
52103 Delaire Landing Road
Philadelphia, PA 19114-5337

**Type of Service:**          **First-Class Mail**

Horace Deloatch
BM 6115
SCI Dallas
1000 Follies Road
Dallas, PA 18612-0286

**Type of Service:**          **Certified Mail**

Dated: May 29, 2019

Joseph Duffy
Law Clerk to the
Honorable Barbara A. McDermott